IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SHELLY RAYNE MCCLENDON-LEMMAN, | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:21-CV-1338-P |
| TARRANT COUNTY COLLEGE, | § § | |
| Defendant. | § § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending before the Court is Defendant Tarrant County College's Motion for Summary Judgment [doc. 34], filed July 14, 2023. Having carefully considered the motion, response, reply, all relevant applicable law, and evidence presented, the Court recommends that Defendant's motion be **GRANTED**.

### I.   BACKGROUND

On January 21, 2022, *pro-se* Plaintiff Shelly Rayne McClendon-Lemman filed her Amended Complaint, which is the live pleading before the Court.[1] In the Amended Complaint, Plaintiff states:

> I'm a whistleblower and have been retaliated against and have been discriminated against. In 2017, a black instructor abused and bullied several of our special needs' students. Many instructors informed our black supervisor, but nothing was done. A few of us made a formal complaint to a black HR employee and she took no action; her black director also did nothing. In 2018, our new black supervisor fired all of the white instructors. She, 3 days later, clawed it back saying the firing was a[n] accident. Since then, black instructors have been getting more hours than the white instructors (although I'm the only which [sic] teacher left).

(Plaintiff's Amended Complaint (Pl.'s Am. Compl.") at 2.) Plaintiff attached multiple documents to her Amended Complaint, including: (1) a letter dated October 20, 2020 from Lauren H.

---

[1] Plaintiff filed her Original Complaint on December 10, 2021.

1

McDonald ("McDonald") from the Office of the Associate General Counsel at Tarrant County College ("TCC" or "TCCD") to Sandra Taylor ("Taylor") at the Equal Employment Opportunity Commission ("EEOC") regarding the EEOC Charge [of Discrimination] filed by Plaintiff against TCC ("October 20, 2020 letter") (Appendix to Pl.'s Am. Compl. ("Pl.'s App.") at 12-1, pp. 1-4); (2) an untitled chart showing that Plaintiff was white, was hired on August 1, 2013, taught 24 instructional hours in September and 32 "CEE Non-Instructional Hrs." in September and that Joshua Timmons ("Timmons") was black, was hired on June 1, 2019, taught 32.2 "CEE Non-Instructional Hrs." in September and was a "Non-credit Adjunct, Hired 02/28/18 as On-call, transitioned to CE instructor 6/1/19" (Pl.'s App. at 12-1, p. 43);" (3) Plaintiff's unsigned response to the October 20, 2020 letter (Pl.'s App. at 12-2, pp. 1-5); (4) a Fact-Finding Report dated November 14, 2019, from Kathy Fragnoli ("Fragnoli"), President of The Resolution Group, to Susan Alanis ("Alanis"), the Chief Operating Officer at Tarrant County College District regarding complaints concerning Jerry Zumwalt ("Zumwalt"), the Executive Director of the Continuing Education and Engagement ("CEE") Program at the Northeast Campus (Pl.'s App. at 12-3, pp. 1-44); and (5) a Fact-Finding Report dated December 1, 2019, from Fragnoli to Alanis regarding issues[2] related to Debra Sykes-West ("West"), who was formerly a Director and now a Coordinator for the CEE Program (Pl.'s App. at 12-4, pp. 1-48).[3]

---

[2] According to Fragnoli, based on her first report regarding Zumwalt, many concerns were raised about West's "interactions with employees in the department—particularly as they relate to [West's] involvement in the termination of four Caucasian employees in the Skills Training Enrichment for Promoting Success department (STEPS)." (Pl.'s App. at 12-4, p. 1.)

[3] These Fact-Finding reports indicate that racial issues existed among the instructors and that Plaintiff had provided a witness statement complaining about "racial issues," students being bullied, and the fact she (and several other white instructors) was fired and rehired with far fewer hours as a result of making such complaints. (Pl.'s App. at 12-4, p. 23-25).

In its Brief in Support of its Motion for Summary Judgment, Defendant states that "Plaintiff began her employment with TCCD as a part-time instructor at TCCD's Northeast Campus in the Skills, Training, Enrichment for Promoting Success ("STEPS")[4] on August 1, 2013. (Def.'s Brief in Support of Motion for Summary Judgment ("Def.'s Br.") at 2; *see* Defendant's Amended Appendix in Support of Motion for Summary Judgment ("Def.'s App.") at 2.) Defendant claims that Plaintiff "did not have an employment contract with TCCD," was employed on an at-will basis, and "continuously worked for TCCD in the same role and program until her voluntary resignation on January 18, 2022. (Def.'s Br.at 2; *see* Def.'s App. at 2.)

Defendant states that "Plaintiff was never issued any formal discipline during her employment with TCCD." (Def.'s Br. 2; *see* Def.'s App. at 2.) Defendant also states that, on September 12, 2018, Plaintiff "filed a complaint with TCCD HR ["(TCCD HR Complaint)"] regarding the alleged bullying of special needs' students by a STEPS instructor." (Def.'s Br. at 3; *see* Def.'s App. at 13-15.) As to this complaint, Defendant states: "Plaintiff's complaint did not include any reference to race. Indeed, Plaintiff's complaint is clear that she is concerned about the bullying needs of special needs' students. This is the only formal internal complaint TCCD has record of receiving from Plaintiff." (Def.'s Br. at 3-4 (citations omitted).)

Defendant claims, *inter alia*, that it "is entitled to summary judgment on Plaintiff's discrimination and retaliation claims to the extent such claims are based on events that occurred prior to 300 days before the filing of her charge of discrimination on August 14, 2020." (Def.'s Br. at 1; *see also* Def.'s Br. at 4-5.) Defendant further argues it is entitled to "summary judgment

---

[4] "The STEPS program provides classes for individuals with special needs[,]" and "[a]ll of the instructors for the STEPS program are part-time adjuncts" that work instructional and non-instructional hours. (Def.'s Br. at 2.) Instructional hours are time spent teaching and non-instructional hours "include providing 'safety duty,' where the instructors ensure the STEPS students navigate the campus safely, and supervising special activities like orientation at the beginning of the school year." (*Id*.)

3

on Plaintiff's discrimination claim because: (1) Plaintiff was not subject to an adverse employment action; and (2) Plaintiff was not treated less favorably than other similarly-situated employees outside of her protected class." (Def.'s Br. at 1-2; *see also* Def.'s Br. at 5-8.) In addition, Defendant claims it is entitled to summary judgment on Plaintiff's retaliation claim "because: (1) Plaintiff did not engage in protected activity; (2) Plaintiff did not suffer an adverse employment action; and (3) due to the remoteness in time, there is no causal link between Plaintiff's alleged protected activity and any adverse employment action." (Def.'s Br. at 2; *see also* Def.'s Br. at 8-11.)

In her response, Plaintiff argues, *inter alia*, that her "[C]omplaint was timely filed" and that she did not "know that she was discriminated against until June of 2020 through FOIA." (Plaintiff's Response to Defendant's Motion for Summary Judgment ("Pl.'s Resp.") at 1. Plaintiff further claims that "Plaintiff's filing of EEOC status did put her in protected activity." (*Id*.) Plaintiff argues:

> Josh Timmons did work as an instructor and it can be proved. He also received more hours; there are copies of timesheets. They know this, they've seen this and they made copies of those timesheets.
>
> Plaintiff did suffer adverse employment action because she received less hours, she was mistreated and verbally abused by Scott Hurbough and was retaliated against. She lost teaching assignments because of her original complaint.

(Pl.'s Resp. at 1.)

In its reply, Defendant argues that Plaintiff has not presented any competent summary judgment evidence and "simply denies Defendant's arguments and concludes, without sufficient legal evidence, that she did satisfy the elements of her *prima facie* case challenged by Defendant in its Motion for Summary Judgment." (Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment ("Def.'s Reply") at 2.) Defendant states that "Plaintiff's Response

is not sworn, and neither her Amended Complaint nor her Original Complaint are verified and are, therefore, not competent summary judgment evidence." (Def.'s Reply at 2-3 (footnote omitted).) Defendant also objects to the documents attached to Plaintiff's Original Complaint as "lacking proper foundation and authentication and hearsay and should not be construed by the Court as Plaintiff's summary judgment evidence." (Def.'s Reply at 2-3, n.1.)

## II. LEGAL STANDARD

The moving party is entitled to summary judgment as a matter of law when the pleadings and evidence before the court show that no genuine issue exists as to any material fact. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To determine whether there are any genuine issues of material fact, the Court must first consult the applicable substantive law to ascertain what factual issues are material. *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.3d 167, 178 (5th Cir. 1990). Disposing of a case through summary judgment serves to reinforce the purpose of the Federal Rules of Civil Procedure, "to achieve the just, speedy, and inexpensive determination of actions, and when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir. 1986) (footnote omitted).

All of the evidence must be viewed in the light most favorable to the nonmovant, but the movant may not satisfy his or her summary judgment burden with either conclusory allegations or unsubstantiated assertions. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citations omitted); *Calbillo v. Cavender Oldsmobile, Inc.,* 288 F.3d 721, 725 (5th Cir. 2002) (citations omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo*

*Cty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citation omitted). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. Although the Court is required to consider only the cited materials, it may consider other materials in the record. *See* Fed. R. Civ. P. 56(c)(3). Nevertheless, Federal Rule of Civil Procedure ("Rule") 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992). Parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citation omitted). "If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). "The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists." *Id*.

### III. ANALYSIS

#### A. <u>Timeliness</u>

"Generally, a Title VII claim is timely under 42 U.S.C. § 2000e-5(e)1 if it is filed [with the EEOC] within either 180 days or 300 days of the alleged discriminatory act [if the plaintiff initially instituted proceedings with a state or local agency]." *Niwayama v. Texas Tech Univ.*, 590 F. App'x 351, 355, n.5 (5th Cir. 2014). Plaintiff's Charge of Discrimination ("Charge") shows that it was filed by Plaintiff on August 14, 2020 to both the Fort Worth Human Relations Commission ("FWHRC") and the EEOC. (Def.'s App. at 20–21.) In the Charge, Plaintiff alleges discrimination based on race and retaliation and states that the earliest and latest dates of discrimination took place

on May 5, 2020. (*Id*.) May 5, 2020 appears to be the date Plaintiff allegedly received a letter of reprimand from Dr. Kenya Ayers, TCCD Campus President. (*See* Pl.'s App. at 12-1, pp. 1, 4 n.2.) Plaintiff, in her Response to Defendant's Motion for Summary Judgment, claims that she did not "know that she was discriminated against until June of 2020 through FOIA." However, Plaintiff does not explain such statement or indicate what information she obtained in June of 2020 through FOIA that she did not previously know.

Because Plaintiff filed her Charge with the FWHRC on August 14, 2020, Plaintiff's discrimination and retaliation claims are time barred to the extent they are based on alleged acts that occurred prior to October 20, 2019,[5] which is 300 days before Plaintiff filed her Charge. Consequently, the Court will not consider any allegations regarding events that occurred prior to October 20, 2019, which includes Plaintiff's allegations that she made a formal complaint with HR in 2018 regarding a black instructor abusing and bullying several special needs' students and her alleged firing and then rehiring in 2018.

## B. Racial Discrimination Claim

Successful racial discrimination claims in cases under Title VII based on circumstantial[6] evidence must satisfy the familiar *McDonnell-Douglas* burden-shifting framework.[7] *See Russell*

---

[5] 14 days in August 2020 + 31 days in July 2020 + 30 days in June 2020 + 31 days in May 2020 + 30 days in April 2020 + 31 days in March 2020 + 29 days in February 2020 + 31 days in January 2020 + 31 days in December 2019 + 30 days in November 2019 + 12 days in October 2019 = 300 days. Counting back 12 days from October 31, 2019 is October 20, 2019.

[6] "To succeed on a claim for racial discrimination under Title VII . . ., a plaintiff may show a *prima facie* case either through direct evidence of discriminatory motive, or circumstantial evidence under the *McDonnell Douglas* burden-shifting framework." *Russell v. City of Tupelo, Miss*., 544 F. Supp. 3d 741, 754 (N.D. Miss. June 16, 2021. Plaintiff does not allege direct evidence of racial discrimination or retaliation, which is evidence that, if believed, proves the fact without inference or presumption. *See Harris v. Drax Biomass Inc.*, 813 F. App'x 945, 947 (5th Cir. 2020).

[7] "Under this framework, the plaintiff carr[ies] the initial burden under the statute of establishing a prima facie case of racial discrimination." *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020) (internal quotations omitted). "Once the plaintiff has met this burden, it shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id*. If the employer has articulated such a reason, the plaintiff

*v. City of Tupelo, Miss.*, 544 F. Supp. 3d 741, 754 (N.D. Miss. June 16, 2021); *Mohamad v. Dallas Cty. Comm. College Dist.*, No. 3:10-CV-1189-L-BF, 2012 WL 4512488, at *5 (N.D. Tex. Sept. 28, 2012) (applying modified *McDonnell-Douglas* framework to discrimination claim). To establish a prima facie case of race discrimination under Title VII, Plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action;[8] and (4) others similarly situated but outside the protected class were treated more favorably. *See Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017).

In this case, Defendant claims that, *inter alia*, Plaintiff cannot show she was treated less favorably than a similarly-situated employee outside of her protected class. (Def.'s Br. at 7.) In support, Defendant states:

> Here, Plaintiff alleges that more work hours were assigned to black instructors over her. While Plaintiff does not identify a comparator in her Complaint, Plaintiff does identify instructional assistant Joshua Timmons in her Charge. However, Timmons is not similarly situated to Plaintiff as his role was primarily that of an assistant to special needs' students rather than an instructor like Plaintiff. Further, Plaintiff cannot show that she received less work hours than non-white instructors as a matter of course. Between Fall 2019 and Fall 2021, the number of hours worked by Plaintiff as compared to non-white instructors varies greatly. For example, in Spring 2020, Plaintiff worked 164 hours while the two non-white instructors, Gloria Belton and LaVerne Hernandez, worked 139 hours and 237.50 hours respectively. In Fall 2020, Plaintiff worked 158 hours while Belton worked 130.5 and Hernandez worked 144 hours. Therefore, Plaintiff cannot show that other similarly situated employees were treated more favorably, and

---

must "offer sufficient evidence to create a genuine dispute of material fact that either: (1) a defendant's reason is not true, but is instead a pretext for discrimination . . ., or (2) a defendant's reason, though true, is only one of the reasons for its conduct and that another 'motivating factor' is the plaintiff's protected characteristic or activity." *Mohamad v. Dallas Cty. Comm. College Dist.*, No. 3:10-CV-1189-L-BJ, 2012 WL 4512488, at *4 (N.D. Tex. Sept. 28, 2012).

[8] Because of the United States Court of Appeals for the Fifth Circuit's recent decision in *Hamilton v. Dallas Cty.*, 79 F.4th 494 (5th Cir. 2023), the Court presumes that Plaintiff's claim that she was discriminated against by being issued a letter of reprimand on May 5, 2020 and receiving a reduction in hours would constitute an adverse employment action. *See also Turner v. Se. Freight Lines, Inc.*, No. 3:14CV347TSL-JCG, 2015 WL 4077498, at *4 (S.D. Miss. July 6, 2015) ("A reduction in hours which results in a loss of pay can constitute an adverse employment action.").

> TCCD is entitled to summary judgment on Plaintiff's Title VII discrimination claim.

(Def.'s Br. at 8.)

In her response and as noted above, Plaintiff claims, *inter alia*, that "Josh Timmons did work as an instructor and it can be proved. He also received more hours; there are copies of timesheets. They know this, they've seen this and they made copies of those timesheets." (Pl.'s Resp. at 1.) Plaintiff fails to set forth, however, any competent summary judgment evidence in her response that supports her claim. Moreover, Plaintiff's Amended Complaint, while signed, was not verified. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam) (noting that a complaint verified as true and correct under penalty of perjury could constitute competent summary judgment evidence); *Gonzalez v. J.P. Morgan Chase Bank N.A.*, No. 2:17-CV-09310-ODW (ASx), 2020 WL 104994, at *2 (C.D. Cal. Jan. 9, 2020) ("A verified complaint is a signed complaint with the plaintiff's oath or affidavit stating that, to the best of his or her knowledge, all information in the complaint is true and correct.")[9] Because "[u]nsworn pleadings[, as in this case,] are not . . . competent summary judgment evidence," the Court cannot consider the statements in Plaintiff's Amended Complaint as evidence. *Flores v. City of San Benito*, No. 1:20-cv-169, 2022 WL 4798291, at *4 (S.D. Tex. July 25, 2022).

However, as set forth above, Plaintiff attached to her Amended Complaint a large number of documents. "[E]vidence that can be presented in an admissible form at trial may be submitted in an admissible form at the summary judgment stage." *U.S. v. Herndon*, No. C-11-318, 2012 WL 4718622, at *5 (S.D. Tex. Aug. 8, 2012); *see* Fed. R. Civ. P. 56(c). Some of these attachments to Plaintiff's Amended Complaint appear to be admissible as party admissions under Federal Rule of Evidence 801(d). Consequently, the Court will consider the following documents attached to

---

[9] *See also* 28 U.S.C. § 1746.

Plaintiff's Amended Complaint as competent summary-judgment evidence in ruling on Defendant's Motion for Summary Judgment to the extent it relates to issues that occurred from October 20, 2019 to the present: (1) the October 20, 2020 letter (Pl.'s App. at 12-1, pp. 1-4); (2) the Fact Finding Report dated November 14, 2019 from Fragnoli to Alanis regarding complaints concerning Zumwalt (Pl.'s App. at 12-3, pp. 1-44); and (3) the Fact Finding Report dated December 1, 2019 from Fragnoli to Alanis regarding issues related to West. (Pl.'s App. at 12-4, pp. 1-48).

In this case, the only *prima-facie* case element that appears in dispute is whether Plaintiff was treated less favorably than black instructors who were similarly situated to her. Plaintiff, in her response and the attachments to her Amended Complaint, identifies Joshua Timmons as being a black instructor that received more hours than she did. (Pl.'s Resp. at 1; Pl.'s App. at 12-1, p. 43.) Defendant, however, claims that "Timmons is not similarly situated to Plaintiff as his role was primarily that of an assistant to special needs' students rather than an instructor like Plaintiff." (Def.'s Br. at 7.) Defendant's evidence in support of this statement includes the Declaration of West, who is the Coordinator of CEE for TCCD's Northeast Campus and responsible for the STEPS Program. (Def.'s App. at 16-19.) In the Declaration, West states that between Fall 2019 and Fall 2021, Timmons was employed as an instructional assistant and "does not have the same job title or responsibility as STEPS program instructors, such as Plaintiff." While Plaintiff in her response argues to the contrary, she does not provide any competent summary judgment refuting Defendant's statements regarding Timmons. Thus, the Court finds and concludes that Timmons is not an employee that is similarly situated to Plaintiff.

Defendant also argues that "Plaintiff cannot show that she received less work hours than non-white instructors as a matter of course." (Def.'s Br. at 7.) Defendant claims that "[b]etween

10

Fall 2019 and Fall 2021, the number of hours worked by Plaintiff as compared to non-white instructors varies greatly." (*Id.*)  Defendant states:

> For example, in Spring 2020, Plaintiff worked 164 hours while the two non-white instructors, Gloria Belton and LaVerne Hernandez, worked 139 hours and 237.50 hours respectively.  In Fall 2020, Plaintiff worked 158 hours while Belton worked 130.5 hours and Hernandez worked 144 hours.  Therefore, Plaintiff cannot show that other similarly situated employees were treated more favorably.

(Def.'s Br. at 8; *see* Def.'s App. at 4-6.)[10]  Plaintiff does not refute Defendant's assertions in her response nor does she provide any competent summary judgment evidence to the contrary.  Consequently, the Court finds and concludes that Defendant is entitled to summary judgment on Plaintiff's claim for racial discrimination as Plaintiff has failed to show that others similarly situated but outside of her protected class were treated less favorably than she was.

### C. Retaliation Claim

Successful retaliation claims in cases under Title VII based on circumstantial evidence also must satisfy the familiar *McDonnell-Douglas* burden-shifting framework.  *See Yancy v. U.S. Airways, Inc.*, 469 F. App'x 339, 343 (5th Cir. 2012) ("To establish a claim for retaliation under Title VII, the Court applies a modified *McDonnell Douglas* approach."); *Mohamad*, 2012 WL 4512488, at *4 (applying modified *McDonnell-Douglas* framework to retaliation claim).  To establish a *prima-facie* case of retaliation, Plaintiff must show: (1) she engaged in a protected activity,[11] (2) an adverse employment action occurred, and (3) a causal link existed between the

---

[10] The Court further notes that, while Plaintiff did receive fewer hours in Spring 2021 than Belton or Hernandez, Plaintiff only received 6 fewer hours as she worked 119.50 hours while Belton and Hernandez each worked 125.5 hours.

[11] "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (internal quotation marks omitted); *see* 42 U.S.C. § 2000e-3(a).

11

protected activity and the adverse employment action. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009).

As stated above, Plaintiff alleges in her Amended Complaint that she was retaliated against because she is a whistleblower. (Pl.'s Am. Compl. at 1.) She references the formal complaint she made to HR on September 12, 2018 regarding the abuse and bullying of special needs' students by a black instructor. (*Id.*) She also references being fired in 2018 and then, 3 days later being rehired and alleges that she has received fewer hours since these events. (*Id.*) In her response, she claims that she has been retaliated against for filing her Charge on August 14, 2020 by receiving less hours, being verbally abused, given a letter of reprimand, and losing teaching assignments. (Pl.'s Resp. at 1.)

After reviewing the evidence, the Court concludes that Plaintiff has failed to establish a causal connection between her protected activity of either filing her report with HR in September 2018 or filing her Charge with the EEOC in August 2020 and any timely alleged adverse employment action. Under Title VII, a plaintiff must prove that retaliation was the "but-for" cause of the challenged employment action, not merely a motivating factor for the employer's action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). The Fifth Circuit has recognized that "[c]lose timing between an employee's protected activity and an adverse action against [her] may provide the causal connection required to make out a *prima facie* case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (internal quotations omitted). To qualify as a causal connection, the temporal proximity between the employer's knowledge of the protected activity and the adverse personnel action must be "very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). The Fifth Circuit has held that a six-and-a-half-week timeframe is sufficiently close, but that a five month lapse is not close enough (without other

evidence of retaliation to establish the "causal connection" element of a prima facie case of retaliation. *See Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020) (internal quotations omitted).)

In this case, Plaintiff's filing of her complaint with HR in September 2018 occurred several years before she was reprimanded in May 2020 and at least one year before she allegedly began receiving fewer hours in retaliation for filing such a complaint. A period of several years does not establish a causal connection for purpose of establishing a retaliation claim. Moreover, as set forth above, Plaintiff does not have competent summary judgment evidence supporting her claim that she was consistently given less teaching hours after she filed the Charge with the FWHRC and the EEOC in August of 2020. In fact the evidence shows that in the fall of 2020, right after Plaintiff filed her Charge, Plaintiff worked 158 hours while Belton worked 130.5 hours and Hernandez worked 144 hours.[12] Even assuming Plaintiff was constructively discharged on January 18, 2022 for filing her Charge with the EEOC on August 14, 2020, such discharge would have occurred almost eighteen months after the filing of such Charge. Once again, a period of over a year does not establish the required causal connection. Consequently, the Court finds and concludes that Defendant is entitled to summary judgment on Plaintiff's claims for retaliation.

## IV. CONCLUSION

For the reasons set forth above, the Court **RECOMMENDS** that Defendant's Motion for Summary Judgment [doc. 34] be **GRANTED** and all claims against Defendant be **DISMISSED**.

---

[12] Defendant was obviously aware that Plaintiff filed such Charge no later than October 20, 2020, the date McDonald, who was employed by the Office of the Associate General Counsel at TCC, sent the letter in response to the Charge to Taylor at the EEOC. (Pl.'s App. at 12-1, pp. 1-4.)

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

### ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **November 16, 2023** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED November 2, 2023.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE